Robert Wolfe, Plaintiff-Appellee, v. Harvey E. Whipple, Defendant-Appellant.

Gen. No. 68–108.

Third District.

August 28, 1969.

Edward Keefe, of Rock Island, for appellant.

Frank Schubert, of Rock Island, for appellee.

ALLOY, J.

Plaintiff Robert Wolfe instituted the present action as against defendant Harvey E. Whipple for personal injuries caused by the alleged negligence of defendant in the operation of an automobile. At the close of all the evidence, the trial court directed a verdict for plaintiff and submitted to the jury only the issue of the amount of damages to plaintiff. The jury returned a verdict assessing such damages at $50,000. On appeal in this Court, defendant contends that the court erred in directing such verdict and, also, that the court erred in entering a certain preliminary order in limine and in excluding certain exhibits.

The record discloses that the plaintiff Robert Wolfe was a police officer working for the City of East Moline. He and officer Van Tyne were on duty around 2:00 o'clock a. m., April 1, 1967, when they received a call to go to a certain destination. They proceeded northerly on Route 84 when the engine on their police car stalled. The engine started again and they proceeded north on Route 84 about 300 feet when the motor stalled again. Plaintiff was driving the car at the time and he put the car into neutral gear and let it roll to a stop. There was some conflict in the evidence as to where the police car finally stopped. The testimony of the driver of a car which stopped behind the police car was that the police car was stopped in the northbound lane heading north and that the car was entirely located within its right-hand side of the highway at such point. Plaintiff and officer Van Tyne both testified that the police car was off on the right shoulder with the exception of the left three feet of the car which was on the highway. The shoulder in the area was about six feet wide and was composed of dirt and cinders. When the accident occurred, it was dark, misty, drizzling, and hazy, and the pavement was wet. Route 84 is level in the area where the police car stopped and there was nothing normally which would obstruct

the vision of anyone approaching the police car from the north or south on Route 84.

After the police car came to a stop, plaintiff activated the single, red, revolving light on top of the police car and he also left the police car headlights on and turned on two blinking amber warning lights on the front of the police car and two on the back of the police car. Plaintiff began to direct traffic around the stalled police car, using a flashlight. No flares were put out, and there was testimony that no flares were required by any prescribed regulation. Officer Van Tyne, who was a mechanic, began to work on the engine of the police car. He raised the hood of the police car. There was a conflict in the evidence as to how far he raised the hood. There was specific evidence of a witness who stopped at the rear of the police car that the hood was raised to its full height. There was also testimony that the hood on the 1966 Ford (the type of police car) can be raised about halfway up and it will hold in that position. If it is raised higher, a spring lift is engaged and it lifts the hood up to its highest point. This highest point was shown to be 18.6 inches above the highest point of the car. The oscillating red light on the top of the car is 12 to 13 inches above the top of the car so that if the hood was opened as high as it could be raised, it would extend about 5.6 inches above the red light on the top of the police car and would obstruct the view of that light. There was evidence that if the hood was not raised to the full height, the red light could be seen by someone coming in the opposite direction and easily seen by a 6-foot man standing in the roadway. As we have indicated, however, the witness in the car stopped behind the police car testified that he observed that the hood of the police car was "all the way up."

Defendant approached the stalled police car from the north proceeding in a southerly direction. There was no obstruction to defendant's vision as he approached the police car, and he testified that he was driving about 35

to 40 miles per hour. Another automobile in front of the defendant proceeded on past the police car with no difficulty. Defendant testified that as he approached the police car, he had his dim lights on, as it was hazy. He testified that he did not see the red revolving light on top of the police car, until he was two car lengths from the police car. At this time the red oscillating light flashed across his window and he slammed on his brakes, his tires skidded on the wet pavement, and he slid into the northbound lane and struck the plaintiff pinning him against the fender of the police car.

As we have indicated, the witness, a Mr. Winston, who was stopped in a position immediately behind the police car testified that while plaintiff had been directing traffic previously, at the time of the accident plaintiff appeared to be leaning over the left front fender of the police car looking under the hood of that car. Plaintiff stated that he looked in the direction of defendant's car sliding toward him but was unable to get out of the way and was immediately pinned against the fender of the police car.

There was a conflict in the evidence during the trial as to whether or not defendant was intoxicated as a result of consumption of alcoholic liquors, but in directing the verdict, the trial judge said that he assumed for the purpose of that motion that defendant was sober.

In the course of the trial, a question arose as to the admissibility of income tax returns of the plaintiff. Plaintiff was injured on April 1, 1967, and did not return to work as a policeman until a year later, on April 4, 1968. He had worked as a policeman during the night and as a building contractor during the day and had built six houses in the year prior to the accident. He had worked as a building contractor along with a John Corea and he and Corea did much of the carpenter and masonry work on the houses, although they did hire some of the work done. Plaintiff testified that he completed six homes

259

after the accident but that he had to hire extra or substitute help to perform the work which he normally did himself but was unable to do because of his injuries. He also testified that several of the people for whom he was building houses performed some of the work which he normally would have done and that he gave them credit for such labor performed by them when they settled up for the houses. Plaintiff testified specifically that he had paid out $9,292 in payments to hired help to perform the work he normally would perform and, also, that he allowed $2,750 in credits to others for whom he was building homes, making a total of $12,042.

After plaintiff had testified, defendant attempted to introduce Exhibits 12, 13 and 14, which were plaintiff's 1965, 1966, and 1967 Income Tax Returns, in evidence. These returns showed wages as follows: In 1965—$919; in 1966—$6,239; in 1967—$6,461. 1967 was the year of the accident. These returns also showed on Schedule C (the business schedule) that the construction business netted the following amounts: 1965—$5,693; 1966—$5,998; 1967—$3,792 (1967 was the year of the accident). These returns were offered in evidence by defendant to show that plaintiff had made a prior admission that he had earned wages of $6,461 in 1967 and such admission was inconsistent with his testimony that he had lost wages of $5,950. The returns were also offered to show that there was a question as to the credibility of plaintiff's testimony that he could have earned $12,042 additional in his construction business if he had not been injured, as the tax return showed a drop in net income from construction business of only about $2,200.

Plaintiff made a motion in limine outside of the presence of the jury for the purpose of excluding such evidence from the trial. At the hearing on such motion to exclude the evidence, which was held in the Judge's chambers, plaintiff's attorney attempted to explain the

1967 wages of $6,461 by saying that such payments were concerned with something analogous to workmen's compensation. It was admitted by both parties that workmen's compensation payments or similar type payments are not to be included on income tax returns, as such payments are not income. Defendant admitted that if the payments were in the nature of workmen's compensation they should not be admitted into evidence but the dispute was concerned with whether the payments were similar to workmen's compensation. It appears that plaintiff may have received the amounts as a substitute for workmen's compensation payments which were returned or waived so as to give plaintiff his full salary during the period of time he was unable to do his work as a police officer. Defendant, however, denied that this $6,461 shown as wages on the 1967 income tax return was from a collateral source and similar to workmen's compensation or disability insurance and contended that the jury should determine from the tax return and the testimony of the plaintiff himself, if such sums were from a collateral source similar to workmen's compensation. The trial judge granted the defendant the opportunity to examine the plaintiff and his accountant outside the presence of the jury to determine if such wages were similar to workmen's compensation or were actually other wages which should be admitted in evidence. Defendant refused such offer contending that such question as to whether these were or were not wages was a fact question which should be determined only by the jury. The trial judge then refused to admit the returns into evidence and granted plaintiff's motion in limine.

■ The fundamental question before us is whether the trial court was correct in directing a verdict for plaintiff on the question of liability. Attorneys for both parties cite Pedrick v. Peoria & Eastern R. Co., 37 Ill2d 494, 229 NE2d 504, as specifically justifying the arguments made by plaintiff for affirmance and by defendant for

reversal of this cause. It is noted that in the case of Pedrick v. Peoria & Eastern R. Co., supra, at page 510, the court stated:

"Nor, as earlier stated, does it seem to us that the any-evidence rule or any of its variants (no conflict in the evidence; scintilla rule) is entirely satisfactory, for literal application thereof prohibits direction of a verdict even though the evidence relied upon in opposition is so overwhelmingly rebutted that no verdict based thereon could possibly stand. In such instances no action other than a directed verdict is consonant with efficiency in our judicial system and with a fair and expeditious termination of litigation.

"Rather, we believe the rule is best which in some form finds favor in other States heretofore indicated and which has, in part, been heretofore recognized in this State. In our judgment verdicts ought to be directed and judgments n. o. v. entered only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand."

It is recognized in the Pedrick case, that where a substantial factual dispute is disclosed by the evidence, either on the issue of plaintiff's due care or defendant's negligence, or where an assessment as to credibility of witnesses and an election between conflicting evidence may be decisive, the constitutional right of the parties to a jury determination should be carefully preserved, and it would be erroneous to direct a verdict in such case. The question, therefore, is whether the record in this case requires or justifies the direction of verdict. ■ ■ It is true that the circumstance that defendant's vehicle crossed into plaintiff's lane where a colli-

sion occurred does not establish negligence by defendant as a matter of law if there is evidence explaining the circumstance for coming into the opposite lane from which reasonable inferences favorable to defendant would be permissible (Andres v. Green, 7 Ill App2d 375, 129 NE2d 430). The parties also agree, that if there is no evidence from which inferences favorable to defendant could be drawn to explain the circumstance of his crossing into the plaintiff's lane where a collision occurred, then it would be proper to direct a verdict for plaintiff (Sughero v. Jewel Tea Co., 37 Ill2d 240, 226 NE2d 28; Tomlinson v. Chapman, 24 Ill App2d 192, 164 NE2d 240).

As related to the case before us, the case of Skala v. Lehon, 258 Ill App 252, affd 343 Ill 602, 175 NE 832, is cited as authority for the principle that a person who gives another reasonable cause for alarm cannot complain when that person so alarmed does not exercise cool presence of mind in reacting to it; that the latter's conduct should be judged not in the light of what later events reveal would have been better or safer, but against the standard of how a reasonable person would have reacted under the circumstances of the same sudden alarm. In this connection, appellant emphasizes the fact that defendant's auto skidded into plaintiff's lane on the wet highway when defendant, being one second away, and sober, applied his brakes in reaction to an alarm created by plaintiff by the flashing oscillating light. Defendant's evidence was that the oscillating light had been obstructed until that time. There was also evidence that plaintiff was standing in the street in such manner that he could not be seen. It is contended that the question of whether plaintiff was in the exercise of due care and whether defendant was negligent should have been submitted to the jury and that it was error to direct a verdict. We are aware of the cases of Caselman v. Schleifer, 97 Ill App2d 123, 239 NE2d 687 and Waldron

v. Hardwick, 99 Ill App2d 36, 240 NE2d 772 (at 774), in which cases the court sustained the principle of allowing direction of verdict under the facts in those particular cases. In those cases, the court indicated that the evidence so overwhelmingly favored the defendant that no contrary verdict would stand. We note also in the case of Nikkinen v. Evans, 90 Ill App2d 438, 232 NE2d 774, in which defendant hit plaintiff's car in plaintiff's lane of traffic, the court had set forth a rule stating that where the evidence conclusively establishes that the collision occurred in the lane which was the proper lane for the plaintiff, defendant had a duty to show that his car was in such traffic lane due to some reason other than his own negligence. In Sughero v. Jewel Tea Co., supra, the court also stated that defendant had a duty of showing that the vehicle was there for some reason other than his own negligence. In that case the quick stop was made because of the abrupt stop on wet asphalt of the automobiles in front of him. To the same effect is Calvetti v. Seipp, 37 Ill2d 596, 227 NE2d 758.

In the case before us we have a situation where the police car was stopped at 2:00 o'clock a. m. on the highway in the correct lane. The facts favorable to defendant disclose that plaintiff was leaning in over the motor and that the hood of the automobile was raised to such a position that defendant could not see the red oscillating light. The speed of defendant at such time was 35 to 40 miles per hour. Defendant stated that it was hazy and raining and that when he was only two car lengths north of the squad car and less than one second away the perspective then given by such proximity allowed the oscillating warning light to flash from behind the raised hood across his windshield and alarmed defendant so that he then quickly slammed his brakes causing his car to slide across the center line and into plaintiff.

While we agree that the case as presented is not a strong one from standpoint of defendant, and that we, as triers of fact, would be inclined to favor the plaintiff's version and determine the issues in favor of plaintiff, the question before us is not one of determining questions of fact but of determining whether the evidence, when viewed in its aspects most favorable to the defendant, so overwhelmingly favors the movant, that a contrary verdict for the opponent could not stand. We have before us a situation where there is in fact a substantial factual dispute, so that assessment of credibility of witnesses may be decisive and where it may be necessary to elect between conflicting reasonable inferences. Under such conditions we do not believe that the Pedrick case requires or authorizes the direction of a verdict. In the Pedrick case the court determined that the inference favorable to plaintiffs upon which they depended to establish their essential element of due care, could have no probative force even if it were accepted by a jury. The nonmoving party is entitled only to those favorable inferences which the law will permit in the context of all the evidence.

The trial court in the cause before us determined as a matter of law (1) that the plaintiff was free of contributory negligence, and (2) that wholly apart from any issue of intoxication, defendant was nevertheless negligent. On the record, the facts were such as to have required that these propositions be submitted to the jury to be decided as questions of fact. We must consider first, viewing the evidence most favorably for defendant, that plaintiff's car was in the correct and northbound lane and that both plaintiff and his companion were leaning over the open hood of the squad car; that the hood of the squad car was raised all the way up so as to obstruct the view of the red oscillating light; that it was shortly after 2:00 o'clock a. m. and dark, hazy and drizzling

265

and that the pavement was wet; that it was possible that some of the other flasher lights on the squad car might have been obstructed by plaintiff as he leaned into the motor; that all of these circumstances raised a question upon which reasonable men might have differed as to whether plaintiff immediately prior to and at the time of the collision was in the exercise of due care for his own safety, and also as to the nature of defendant's conduct.

On the basis of the record before us, we believe that the trial court erred in directing a verdict and that this cause should be reversed and remanded for new trial by jury by reason thereof.

■■■■ Whether the trial court erred in allowing the motion in limine in excluding the defendant's exhibits consisting of the income tax returns may be involved in this cause on its retrial. It is appropriate, therefore, that we should refer to such issue. The parties recognize that the collateral source rule to the effect that evidence that plaintiff received payments while he was disabled, due to an accident, in the form of workmen's compensation or disability insurance payments or gratuitous payments, would not be admissible in a civil suit by plaintiff for damages (Hoobler v. Voelpel, 246 Ill App 69, 78). The reasonable rule is that gratuitous payments in such case would not preclude a recovery for loss of time on the theory that the wrongdoer can have no concern with the transaction between employer and employee and the amount so paid is not to be regarded, under the circumstances, as in any sense compensation for lost time but rather as a gratuity given by one to the other out of relations of friendship or sympathy between them. Defendant has argued that the jury should decide from plaintiff's testimony and his 1967 income tax return, if the $6,461 was such collateral type income. The court at the hearing in chambers on the motion in limine to exclude such evidence gave defendant ample opportunity

to examine plaintiff and his accountant to determine the source of such $6,461. Defendant refused again, contending such question was a jury question. We do not agree. The entire theory of the collateral source rule is to keep the jury from learning anything about the collateral income so that it will not influence the decision of the jury. Plaintiff made an offer of proof saying that if plaintiff were to testify as to the source of this $6,461 he would testify that such funds were in the nature of workmen's compensation or gratuitous payments and that such evidence should be excluded from the jury. Defendant made no counteroffer of proof and did not avail himself of the opportunity to examine plaintiff and his accountant to determine the exact source of the $6,461. Since defendant failed to make such examination, the offer of proof by plaintiff would stand and the court was correct in refusing to admit the 1967 income tax return into evidence as to this issue. Defendant had his opportunity to determine the source of such income in order to make proper objection to the court's refusal to admit the return in evidence. He did not avail himself of such opportunity. The question of admissibility of such tax return was for the court and not for the jury. The ruling of the court on this issue, therefore, was not erroneous.

As to the issue involved in the income tax return upon which plaintiff contended he had sustained a $12,042 loss by having to hire other workmen and allowing credits on his construction work for labor performed by the home purchaser, the argument of the attorney for plaintiff was that the only issue on the question of damages in regard to plaintiff's construction business, was the amount of substitute labor hired and the credits allowed for labor performed by the owners. Plaintiff contends that the question of whether the business showed a profit or loss was immaterial. While it is true that plaintiff could place in evidence the cost

of his substitute labor and credits, defendant should have been allowed to introduce in evidence the plaintiff's profit from his contracting business both before and after the accident. In this case the only evidence the jury heard as to plaintiff's loss of earnings in his contracting business was that he paid out $12,042 to workmen who performed labor which he himself could have performed had he not been injured. Actually, plaintiff's 1966 and 1967 income tax returns showed that plaintiff's profits from his business declined only $2,206 in 1967, the year of his accident. In spite of this, only the figure of $12,042 was presented to the jury while the tax returns showed he never made a net of over $6,000 in his contracting business in either the year 1965 or 1966. It was, therefore, not proper for plaintiff to select one area of damages to his business by reason of impairment of earning capacity and say that this should be the entire basis of his claim for damages. While we believe it was proper to show the cost of hiring a substitute and credits, this should be considered along with other evidence of damages to earning capacity, including the profits derived from the business which employed the substitute labor, since this would indicate fully the nature of damage which plaintiff suffered rather than disclose only one aspect of such claim for damages. In the case before us, defendant had offered the entire income tax return including the portion relating to wages which was not appropriate for jury consideration. Had defendant made a request for the court to admit just the business schedule, Schedule C of the return, this would have been appropriate. Such portions of the return could have been made available to the jury in conjunction with the testimony as to the cost of substitute labor and credits.

This cause will, therefore, be reversed and remanded to the Circuit Court of Rock Island County, Illinois, with directions to vacate the judgment entered herein

and to grant the parties a new trial on all issues in such cause.

Reversed and remanded.

STOUDER, P. J. and RYAN, J., concur.