NANCY JO GRAVES et al., Plaintiffs-Appellants, v. DAVID L. WORNSON et al., Defendants-Appellees.

Third District   No. 77-207

Opinion filed January 10, 1978.

874

Ole Pace, III, of Ward, Ward, Castendyck, Murray & Pace and Louis F. Pignatelli, of Pignatelli, Kavadas & Pignatelli, both of Sterling, for appellants.

William E. Arnold, of Besse, Frye, Arnold & Brooks, of Sterling, for appellees.

Mr. JUSTICE SCOTT delivered the opinion of the court:

This is an appeal from a judgment of the circuit court of Whiteside County, Illinois, entered after a jury trial. The jury had rendered a verdict of not guilty in favor of both defendants and against both plaintiffs.

Suit had been filed against the defendants, David L. Wornson, a semi-trailer truck driver, and J. I. Case Company, his employer, by Nancy Jo Graves for her personal injuries and by First National Bank of Sterling, as administrator of the estate of Donna J. DeGraffenreid, deceased, for her wrongful death.

On the morning of December 21, 1974, Graves was operating a motor vehicle on Illinois Route 2, two miles west of its intersection with Illinois Route 78. It was snowing. Earlier that day Graves, her sister, Donna DeGraffenreid, and Lucille Pennington had driven to Morrison, Illinois. They rode in Graves' 1967 Oldsmobile. DeGraffenreid was riding in the back seat. Graves was driving and Lucille Pennington was riding in the front passenger seat. After completing their business in Morrison the women intended to go to Erie, Illinois, to visit Graves' children. They drove south from Morrison on Route 78 until they came to its intersection with Route 2 at "Hamilton's Corner" and then went west on Route 2.

Somewhere between Morrison and that intersection they met a State snowplow driven by William Norman. The snowplow driver was making his second pass at removing snow on this route, which was from Morrison to Erie and back again. The Graves vehicle followed the snowplow from

the time they met between Morrison and the intersection of Routes 2 and 78 to the place of the collision which was to occur. Graves never attempted to pass the snowplow.

Approximately two miles west of the intersection of Route 2 and Route 78 the collision occurred. There was visibility of at least half a mile. The condition of the road was described by the driver of the snowplow as good wheel tracks with snow in between the wheel tracks. There was also testimony that the roads were wet and a little slippery, but that the witnesses were able to control their vehicles.

The west-bound traffic proceeded westerly on Route 2. The first vehicle driving in the west-bound lane was the snowplow followed by the Graves vehicle. Shortly prior to the accident a gray semi-trailer truck, also west bound, was following the Graves vehicle. Next was a vehicle driven by the defense witness, Boyce Curfman. In the Curfman car were his sister, Mavon Curfman, and Vickie Gibson, also defense witnesses. Vickie Gibson was in the back seat and Mavon Curfman was in the passenger seat in the front. As this west-bound traffic approached the intersection of Route 2 with Benton Road from the east, a blue-and-white east-bound automobile was approaching that intersection from the west followed by the defendant Wornson's semi-trailer truck, also east bound. The Wornson truck was an International cab with dual axles on a tractor and trailer. It was in good working condition. Wornson was following the east-bound blue-and-white car at the speed of approximately 35 to 40 miles per hour maintaining an interval of approximately 75 feet.

As the west-bound traffic was approaching Benton Road the west-bound gray semi-trailer truck following the Graves car pulled out to pass both the Graves vehicle and the snowplow. The gray truck overcame both vehicles and pulled back in front of the snowplow before reaching the intersection with Benton Road. Gibson and Mavon Curfman testified that they thought there was insufficient space for the gray truck to pass safely. The east-bound blue-and-white car apparently slowed and the Wornson truck slowed behind it allowing the gray truck back in its proper lane. After the gray truck returned to the west-bound lane, the blue-and-white car continued in the east-bound lane, met and passed in succession the gray truck, the snowplow, the Graves vehicle, and the Curfman vehicle, and the defendant Wornson followed in his semi-trailer truck.

It appears that both the blue-and-white vehicle and the Wornson truck slowed, although testimony is conflicting on that point. Wornson testified that the blue-and-white car slowed and that when he was abreast of the snowplow he believed that the blue and white car applied its brakes and was apparently stopping. Wornson also testified that when he saw the gray truck start to pass he started to slow by shifting gears. He thought he went from seventh or eighth to fourth gear. He did not swerve to the right

to avoid the gray truck. He did not apply his brakes until he saw the brake lights on the blue-and-white car ahead of him which was after the gray truck was back in its own lane and was at a time when Wornson was approximately abreast of the snowplow. He said he saw a sudden cloud of snow and simultaneously saw the lighted brake lights on the blue-and-white car ahead of him.

The snowplow driver testified that no snow was being thrown over on the south side of the blade toward the center of the highway and no other witnesses testified to any snow cloud or snow being thrown.

After the Wornson truck had passed the snowplow the snowplow driver saw the truck cross into the west-bound lane in his rearview mirror. When Wornson applied his brakes the truck went into a slow skid, turning clockwise to the left. Wornson's truck hit the Graves vehicle in the left front side propelling it into a farmyard north of the highway. Wornson testified that the Graves vehicle was in its proper west-bound lane at all times he observed it until the time of impact. Graves and Pennington testified that the vehicle was in the proper west-bound lane at all times prior to the collision. The blue-and-white car at no time left its east-bound lane of traffic and did not lose control. Worson was thrown from the cab of the truck by the collision. He skidded for a hundred feet on his back on the highway alongside the truck which continued in the west-bound lane after the collision and struck the Curfman car. Wornson's truck ultimately stopped across the west-bound lane of traffic. The Curfman car came to rest on Benton Road just north of its intersection with Route 2.

Immediately prior to the impact the decedent, Donna DeGraffenreid, was in reasonably good health and condition and immediately following the accident was dead of a broken neck. Graves sustained serious personal injuries in the collision.

Following the close of the cases by both the plaintiffs and the defendants, the plaintiffs moved for a directed verdict in their favor on the issue of liability. The court reserved its decision on these motions.

In a conference on instructions, objection was made by plaintiffs to defendants' instruction 22 pertaining to supervening causes in the context of Illinois Pattern Jury Instructions, Civil, No. 15.01 (2d ed. 1971) to which error is asserted herein. The jury returned a verdict for the defendants against both plaintiffs. The trial judge thereafter denied plaintiffs' motion for directed verdict ruling on those motions he had previously reserved. He denied each plaintiff's motion for judgment notwithstanding the verdict on liability and for a new trial on the issue of damages alone and denied each plaintiff's motions for a new trial on all issues.

The plaintiffs raised the following issues on appeal: (1) the trial judge erred in failing to direct a verdict for the plaintiffs on the issue of liability and in refusing to enter judgment notwithstanding the verdict and to

award a new trial on the issue of damages only; (2) the court committed prejudicial error when it instructed the jury by giving defendants' instruction 22 and by denying plaintiffs' instruction 9 concerning concurrent negligence in the context of the facts and the other relevant instructions; (3) the jury verdict in the case is against the manifest weight of the evidence. We will first direct our attention to the issue raised by the plaintiffs, to-wit, that the trial judge erred in failing to direct a verdict for the plaintiffs on the issue of liability and in refusing to enter a judgment notwithstanding the verdict.

In determining this issue we direct our attention to the case of *Wolfe v. Whipple* (1969), 112 Ill. App. 2d 255, 251 N.E.2d 77. In the instant case as in the cited case the attorneys for all parties are relying upon the case of *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504, as justifying their arguments, the plaintiffs for a reversal and the defendants for an affirmance.

■■ The landmark case of *Pedrick* well established the rule that verdicts ought to be directed and judgments *n.o.v.* entered only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand. *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504.

The reviewing court in the case of *Whipple* stated:

"It is recognized in the Pedrick case, that where a substantial factual dispute is disclosed by the evidence, either on the issue of plaintiff's due care or defendant's negligence, or where an assessment as to credibility of witnesses and an election between conflicting evidence may be decisive, the constitutional right of the parties to a jury determination should be carefully preserved, and it would be erroneous to direct a verdict in such case. The question, therefore, is whether the record in this case requires or justifies the direction of verdict." *Wolfe v. Whipple* (1969), 112 Ill. App. 2d 255, 262, 251 N.E.2d 77.

■■ The circumstance that defendant's vehicle crossed into plaintiff's lane where collision occurred does not establish negligence as a matter of law if there is evidence explaining the circumstance for coming into the opposite lane from which reasonable inferences favorable to the defendant could be drawn. See *Wolfe v. Whipple* (1969), 112 Ill. App. 2d 255, 251 N.E.2d 77; *Andres v. Green* (1955), 7 Ill. App. 2d 375, 129 N.E.2d 430.

Following these principles of law we must examine the record in the instant case for the purpose of determining whether a substantial factual dispute exists either on the issue of defendant's negligence or the plaintiff's exercise of due care. Without making a detailed and repetitious

recitation of the evidence adduced during the trial of the instant case we must nevertheless call attention to certain evidence which we believe presented a substantial factual ·dispute which merited a jury determination. We refer to testimony concerning weather conditions on the date and time of the accident, *i.e.*, a snow-covered highway which was described as being slick, the testimony concerning a gray semi-trailer truck which passed traffic in its lane of travel and whether or not it had sufficient space to reenter its lane of traffic or whether it created a problem of the defendant truck driver in controlling his vehicle. Also to be considered is the testimony of the defendant truck driver concerning his actions in attempting to reduce the speed of his vehicle and the testimony that he saw the brake lights illuminate on a blue and white car ahead of him at the time he applied his air brakes. We also deem significant the testimony that the plaintiff driver Nancy Jo Graves took no action to avoid the collision although photographs introduced into evidence disclosed a highway with wide shoulders.

■■ Without making a further summarization of the evidence, we believe that there was indeed a substantial factual dispute presented as to the defendant's negligence and the plaintiff's exercise of due care. We have before us a situation where the assessment of the credibility of witnesses may be decisive and where it may be necessary to elicit between conflicting reasonable inferences. Under such conditions we do not believe that the *Pedrick* case requires or authorizes the contention of the plaintiffs that the trial court should have directed a verdict for them or should have entered judgment for them notwithstanding the verdict.

We now direct our attention to the plaintiffs' contention that the trial court committed reversible error in regard to instructions which it tendered to the jury. In addressing ourselves to this issue we note that plaintiffs' tendered instruction #9 reads as follows:

> "More than one person may be to blame for causing an injury. If you decide that the defendant or defendants were negligent and that their negligence was a proximate cause of injury to the plaintiff it is not a defense that some third person who is not a party to the suit may also have been to blame."

Defendants' tendered instruction #22 reads:

> "More than one person may be to blame for causing an injury. If you decide that the defendant or defendants were negligent and that their negligence was a proximate cause of injury to the plaintiff it is not a defense that some third person who is not a party to the suit may also have been to blame."

> "However, if you decide that the sole proximate cause of the injury to the Plaintiff was the conduct of some person other than the Defendant, then your verdict should be for the Defendant."

The plaintiffs, Graves and the First National Bank of Sterling, objected to the instruction as tendered by the defendants, Wornson and J. I. Case Company. Their objections were overruled and the instruction was given.

■■ The plaintiffs' objections were based on the language "sole proximate cause" which is contained in the second paragraph of the instruction. This language when read in conjunction with the language in plaintiffs' instruction 10, "If you decide that the defendant or defendants were negligent and their negligence was a proximate cause of injury to the plaintiff, it is not a defense that something else may also have been a cause of the injury." (IPI Civil 2d No. 12.05) can be misunderstood and misapplied by a jury. The instruction could mislead the jury into thinking that a third party could be the sole proximate cause of the injury and that the defendant could not be the sole proximate cause. We believe that the objection has merit.

■■ Illinois Pattern Jury Instructions are designed to correctly and uniformly instruct juries in the law applicable to the particular case being decided. Every party has a right to have the jury instructed fairly and correctly. The instructions must not be constructed so as to confuse or mislead the jury. (*Ball v. Continental Southern Lines, Inc.*, (1977), 45 Ill. App. 3d 827, 360 N.E.2d 81.) If the instructions correctly state the law, but still mislead the jury, they cannot be given. *Van C. Argiris Co. v. Caine Steel Co.* (1974), 20 Ill. Ap. 3d 315, 314 N.E.2d 361.

Instructions to the jury must be given only when there is evidence which supports the theory of the instruction. (*Baird & Warner, Inc. v. Ruud* (1976), 45 Ill. App. 3d 223, 359 N.E.2d 745.) If there are no facts in the record which support a theory, an instruction on that theory is prejudicial error. *Schomer v. Madigan* (1970), 120 Ill. App. 2d 107, 255 N.E.2d 620; *Darby v. Checker Co.* (1972), 6 Ill. App. 3d 188, 285 N.E.2d 217.

Defendants argue that the proximate cause of the injury here was the action of the gray truck in passing when there was insufficient space to do so. Wornson was placed in an "emergency situation" and was forced to take action which resulted in his collision with the Graves vehicle. This theory is not supported by the record. According to the testimony of all witnesses, the gray truck was able to return safely to its own lane of travel. The Wornson truck was under control and in its own proper lane when it reached the snowplow. It was not until Wornson was abreast of the snowplow that he braked his truck causing it to skid and jackknife and collide with the Graves vehicle. According to Wornson's own testimony the events leading to the collision occurred after the gray truck passed him and returned to its own proper lane. Therefore, the actions of the gray truck could not be the sole proximate cause of the collision.

If there is no sole proximate cause of the injury, no instruction regarding sole proximate cause may be given.

In view of our decision herein, it is not necessary that we discuss the other issues raised by Graves and the First National Bank of Sterling.

For the reasons stated above, the judgment of the circuit court of Whiteside County is reversed and the cause is remanded for a new trial.

Reversed and remanded.

ALLOY, P. J., and STOUDER, J., concur.