MORRIE YEDOR, Plaintiff, v. CENTRE PROPERTIES, INC., *et al.*, Defendants and Third–Party Plaintiffs-Appellees (Ace Disposal Division of Waste Management of Illinois, Inc., Third–Party Defendant-Appellant).

First District (2nd Division) No. 87—3635

Opinion filed July 12, 1988.

Robert J. Hourigan, of Chicago, for appellant.

Epton, Mullin & Druth, Ltd., of Chicago (Eric A. Freeland, of counsel), for appellee.

PRESIDING JUSTICE HARTMAN delivered the opinion of the court:

A jury found third-party defendant Ace Disposal Division of Waste Management of Illinois, Inc. (Ace Division), 65% liable for injuries incurred by the original plaintiff, Morrie Yedor, and Centre Properties, Inc. (Centre), liable for 35% thereof, from which Ace Division appeals. We are asked to review whether (1) the circuit court erred in denying Ace Division's motions to dismiss Centre's amended complaint as time barred; (2) Ace Division's motions for directed verdict and judgment notwithstanding the verdict should have been granted; (3) the opening statement by Centre's counsel prejudiced Ace Division's case; (4) Centre's exhibits 19 and 20 and testimony relating to them were properly admitted into evidence; and (5) the circuit court erred in its rulings regarding certain jury instructions.

Yedor allegedly slipped and fell in a puddle of oil while walking across a loading dock located at the south side of Centre's building at 180 N. La Salle St. (La Salle Plaza) in Chicago, Illinois, on April 13, 1982, causing extensive injuries. Yedor's second amended complaint, filed April 5, 1984, asserted that Centre and Teachers Realty Corporation (collectively Centre) "owned *** operated, managed and controlled" La Salle Plaza and negligently failed to maintain the premises, creating an unsafe and dangerous condition, and causing Yedor's injuries. Other defendants were joined, but subsequently were dismissed.

With leave of court, Centre filed a third-party complaint for contribution against "Ace Disposal Service, Inc." on May 7, 1985, alleging that it negligently delivered a dumpster to the loading dock so as

to cause an oily substance to be on the surface of the dock, and "negligently maintained its trucks and delivery apparatus so as to allow fluids to escape from the truck's [sic] hydraulic systems while on the loading dock."

A summons issued the same day to "Ace Disposal Service, Inc." in Morton Grove, Illinois, was returned "not served" on May 17, 1985, because "[third-party defendant] not at [address] given." Centre filed an amended third-party complaint on May 15, 1985, realleging the substance of its original third-party complaint against Ace Disposal Service, Inc., in count I and, in count II, asserting the negligence of other defendants also subsequently dismissed. Centre sought contribution should it be found liable for Yedor's injuries.

An attempt was made to serve "Ace Disposal Service, Inc.," at "13707 S. Jeffery" in Chicago with alias summons issued on August 5, 1985, but on August 22, 1985, the summons was returned "not served," with a note that the company had moved. On August 7, 1985, the circuit court ordered, inter alia, the severance of Centre's third-party action, "without prejudice to third party defendants conducting discovery in any related re-filed matter."

A second alias summons issued October 2, 1985, was directed to "Ace Disposal" at "1500 North Hooker" in Chicago and service was accomplished October 10, 1985, on an agent of the company.

On October 17, 1985, the court ordered the dismissal of Yedor's action against Centre, noting the settlement of Yedor's claim between Yedor and Centre, and further ordered that the third-party action previously severed remain unaffected by the dismissal.

Third-party defendant Waste Management of Illinois, Inc. (Waste Management), "incorrectly sued as Ace Disposal Systems, Inc.," filed a special and limited appearance on November 12, 1985. A third alias summons issued on April 24, 1986, was directed to "Waste Management of Illinois, Inc., d/b/a Ace Disposal" at 1500 N. Hooker in Chicago. Service was accomplished May 2, 1986.

Waste Management filed, on June 10, 1986, an affidavit in support of a previously filed motion to quash service of summons. Edward Kalebich, "[m]anager of the Ace Disposal Division of Waste Management of Illinois, Inc." swore that: (1) Ace Division is an unincorporated division of Waste Management; and (2) neither Ace Division nor Waste Management "have [sic] any relationship" with Ace Disposal Service, Inc., an actual Illinois corporation located in Morton Grove, Illinois.

On June 10, 1986, the court denied Waste Management's motion to quash service and ordered Centre's amended third-party complaint further amended on its face to reflect "Ace Disposal Service Division

of Waste Management of Illinois, Inc." as third-party defendant, "in lieu of Ace Disposal Service, Inc."

Conceding that it was served with summons on October 10, 1985, Ace Division moved to dismiss Centre's amended third-party complaint, alleging that Centre's claim for contribution filed prior to dismissal of Yedor's suit named a separate and distinct corporation, not Ace Division, as third-party defendant, and that it was only after the dismissal of Yedor's cause of action that Ace Division was joined as third-party defendant, thereby barring the third-party action. Centre's response and Ace Division's reply followed. The circuit court denied the motion.

Following a trial, a jury returned a verdict in Centre's favor, apportioning 35% of the liability for Yedor's injuries to Centre and 65% of the liability to Ace Division, on which the circuit court entered judgment. By post-trial motion, supplemental motions and memoranda in support thereof, Ace Division requested that the court set aside the verdict and enter a judgment notwithstanding the verdict in favor of Ace Division, or in the alternative, grant it a new trial. The circuit court denied the post-trial motions on November 2, 1987. On November 25, 1987, Ace Division filed its notice of appeal.

I

Ace Division first contends that the circuit court erred in denying its motions to dismiss Centre's amended third-party complaint because: (1) service of the third alias summons correctly designating Ace Division as a division of Waste Management and the amendment to the third-party complaint to reflect Ace Division's joinder to the suit were accomplished long after Yedor dismissed his claim against Centre on October 17, 1985; and (2) under *Laue v. Leifheit* (1984), 105 Ill. 2d 191, 196, 473 N.E.2d 939, a third-party action for contribution is barred unless initiated during the pendency of the underlying claim. See Ill. Rev. Stat. 1985, ch. 70, par. 305.

■ The term "misnomer" in law is not a euphemism for the word "mistake." Under section 2—401(b) of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—401(b)), misnomer is recognized where plaintiff sues and serves the right party but by the wrong name, as opposed to naming the wrong party. (*Thielke v. Osman Construction Corp.* (1985), 129 Ill. App. 3d 948, 951, 473 N.E.2d 574; *Hatcher v. Kentner* (1983), 120 Ill. App. 3d 571, 573, 458 N.E.2d 131; *Stevens v. Yonker* (1973), 12 Ill. App. 3d 233, 234, 298 N.E.2d 395.) The pivotal determination is whether plaintiff actually serves the real party in interest with a copy of the complaint and summons, within

the time limits allowed by law, so that actual notice of the complaint that has been lodged against it and notice of the need to respond has been given to that party in interest, albeit incorrectly named. Ill. Rev. Stat. 1985, ch. 110, par. 2—401(b); *Janove v. Bacon* (1955), 6 Ill. 2d 245, 250, 128 N.E.2d 706; *Hoving v. Davies* (1987), 159 Ill. App. 3d 106, 109, 512 N.E.2d 729; *Thielke v. Osman Construction Corp.*, 129 Ill. App. 3d at 951; *Hatcher v. Kentner*, 120 Ill. App. 2d at 575; *Leonard v. City of Streator* (1983), 113 Ill. App. 3d 404, 408, 447 N.E.2d 489; *Clinton v. Avello* (1982), 105 Ill. App. 3d 336, 338, 434 N.E.2d 355; *Ashley v. Hill* (1981), 101 Ill. App. 3d 292, 294, 427 N.E.2d 1319; *Borkoski v. Tumilty* (1977), 52 Ill. App. 3d 839, 842, 368 N.E.2d 136.

■ Here, an agent of the real party in interest, Ace Disposal Division of Waste Management of Illinois, Inc., was actually served with summons and with a copy of Centre's amended third-party complaint on October 10, 1985, one week before Yedor's lawsuit against Centre was dismissed by the circuit court on October 17, 1985, upon settlement. Therefore, the real party in interest had actual notice that it was being called upon to respond to alleged negligence in having deposited oil on Centre's loading dock at La Salle Plaza during the course of waste removal services rendered by it to the building. Although service was made upon a party improperly named, it was indeed the real party in interest. The third-party complaint was subsequently corrected by court order after a third alias summons was served upon the now properly named defendant on May 2, 1986. Under this evidence, the circuit court correctly denied Ace Division's motion to quash service.

■ Were we to have concluded that section 2—401(b), the misnomer statute, did not apply, the June 10, 1986, amendment to Centre's amended third-party complaint related back to the filing of the original third-party complaint on May 7, 1985, pursuant to section 2—616(d) of the Code of Civil Procedure. (Ill. Rev. Stat. 1985, ch. 110, par. 2—616(d).) That section specifies that a cause of action against a party not originally named a defendant is not barred by a lapse of time under any statute or contract prescribing or limiting the time in which an action may be brought or right asserted, provided all five conditions set forth in the statute are met. Ill. Rev. Stat. 1985, ch. 110, par. 2—616(d); *Campbell v. Feuquay* (1986), 140 Ill. App. 3d 584, 587, 488 N.E.2d 1111; *Suste v. Sterr* (1985), 135 Ill. App. 3d 652, 653-54, 482 N.E.2d 184.

The record facts here demonstrate conformity with the five conditions, in that: (1) the original third-party complaint was filed May 7,

1985, well before the court dismissed the underlying claim on October 17, 1985; (2) an agent of Ace Division was actually served with summons on October 10, 1985; (3) service of the second alias summons on October 10, 1985, brought the fact of Centre's claim within Ace Division's knowledge before the dismissal of Yedor's claim and notified it of the occurrence involving its business with Centre; and (4) the contribution action asserted in the original third-party complaint and the claim lodged against Ace Division in the final, amended pleading were the same and therefore "grew out of the same transaction or occurrence" alleged in the original pleading.

Ace Division questions fulfillment of the "inadvertence" condition of section 2—616(d)(2) because Centre failed to serve it with summons and complaint sooner, however, noting that Centre's building manager swore by affidavit that, at the time Yedor sustained his injuries, La Salle Plaza had a contractual relationship with "Ace Disposal Service," located "at 1500 North Hooker" in Chicago, for the disposal of waste collected at the building. The affidavit, however, also reveals the manager's claim that he was never informed of Ace Disposal Service's status as a division of Waste Management of Illinois, Inc.

The portion of section 2—616(d)(2) concerning "inadvertence," has been interpreted as " 'not turning the mind to a matter: heedless, negligent, inattentive' " (*Campbell v. Feuquay*, 140 Ill. App. 3d at 588, quoting *Evans v. Graber, Inc.* (1983), 115 Ill. App. 3d 532, 535, 450 N.E.2d 482; *Silver v. Lee Shell Equipment Corp.* (1961), 31 Ill. App. 2d 266, 269, 175 N.E.2d 287), "excusable ignorance" (*Robinson v. Chicago National Bank* (1961), 32 Ill. App. 2d 55, 61, 176 N.E.2d 659), and ''[taking into] account *** the problem that lawyers in our time have of determining the right defendant" (*Silver v. Lee Shell Equipment Corp.*, 31 Ill. App. 2d at 270).

An assertion of inadvertence fails where defendant's true identity is known to plaintiff prior to the expiration of the limitations period and plaintiff fails to act appropriately. (See *Fields v. 6125 Indiana Avenue Apartments, Inc.* (1964), 47 Ill. App. 2d 55, 58, 196 N.E.2d 485; *Robinson v. Chicago National Bank*, 32 Ill. App. 2d at 61.) Here, the building manager's affidavit indicates Centre dealt with "Ace Disposal Service" located on Hooker Street in Chicago when service of the summons and first alias summons was attempted; nonetheless, Centre also believed "Ace Disposal Service" to have been an independent corporate entity, unaware that it was a division of Waste Management. In our opinion, under these circumstances, Centre's failure to investigate further into Ace Division's true identity and location falls within the "excusable ignorance" contemplated by Illinois courts and

is not, alone, sufficient to defeat its reliance upon section 2—616(d). See *Campbell v. Feuquay*, 140 Ill. App. 3d at 589; *Suste v. Sterr*, 135 Ill. App. 3d at 654-55.

## II

Error is next identified in the denial of Ace Division's motion for a directed verdict, made at the close of Centre's case, and the later denial of its motion for judgment notwithstanding the verdict, presented in the post-trial motion.

■ Motions for directed verdict and judgment notwithstanding the verdict may be granted only when all the evidence, viewed most favorably to the nonmoving party, so overwhelmingly favors the moving party that no contrary verdict could ever stand. (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504; *McKanna v. Duo-Fast Corp.* (1987), 161 Ill. App. 3d 518, 527, 515 N.E.2d 157; see also *Derrico v. Clark Equipment Co.* (1980), 91 Ill. App. 3d 4, 8, 413 N.E.2d 1345; *Reynolds v. American Oil Co.* (1975), 32 Ill. App. 3d 905, 912, 337 N.E.2d 403; *Friesland v. City of Litchfield* (1960), 24 Ill. App. 2d 390, 395, 164 N.E.2d 606.) Directed verdicts and judgments notwithstanding the verdict are improper where reasonable minds may differ as to inferences or conclusions to be drawn from facts presented (*Lee v. Grand Trunk Western R.R. Co.* (1986), 143 Ill. App. 3d 500, 510, 492 N.E.2d 1364), and where evidence demonstrates a substantial factual dispute, or where assessment of witnesses' credibility or resolution of conflicting evidence may determine the outcome (*Lee v. Grand Trunk Western R.R. Co.*, 143 Ill. App. 3d at 509; *Graves v. Wornson* (1978), 56 Ill. App. 3d 873, 877, 371 N.E.2d 692; *Wolfe v. Whipple* (1969), 112 Ill. App. 2d 255, 262, 251 N.E.2d 77).

The evidence reveals that the dock area was located at the south side of the La Salle Plaza building, adjacent to and contiguous with the north side of an east-west alley. The dock was four to five inches above the alley pavement level. Rectangular building support columns, spaced about 35 feet apart, were located near the south edge of the dock, thereby creating a three-bay dock. An Ace Division open-top dumpster was described as located a few feet west of the second column west of the east edge of the loading dock, with the dumpster's south edge about five feet north of the south edge of the loading dock.

Robert Wieley, maintenance supervisor at La Salle Plaza in April 1982, testified that the building's maintenance staff was responsible for cleaning the loading dock area each morning, starting at approxi-

mately 6 a.m., and for checking the dock from time to time during the day and removing any debris. Any oil spills would be removed by using an oil dryer. A restaurant on the premises used the dock to store solid wastes, but any liquid wastes from the restaurant were disposed of in a drum in the building and were never removed to the loading dock. No maintenance staff member reported seeing a puddle of oil on the dock the day of the accident.

Yedor averred he slipped on a puddle of an "oily substance" while walking between a column and a dumpster placed approximately 3½ feet away from the column and on the dock. He fell to the pavement, got up, and saw that his white trench coat was covered with a dark or black substance, which he did not see before he fell. Yedor could not remember the color of the dumpster next to the oil spot, nor whether it bore any distinctive markings.

Immediately following his fall, Yedor returned to his office adjacent to La Salle Plaza at approximately 10:45 a.m. and related the details of his accident to his director, who asked Lawrence Turro, Yedor's supervisor, to accompany Yedor back to the loading dock and gather details for an injury report. They proceeded directly to the dock, where Yedor showed Turro the location of his accident: Turro there saw a dumpster marked "Ace Disposal"; could not remember its color; but remembered that it was the only dumpster on the dock at the time. Turro maintained that the dumpster was 3½ to 4 feet northwest of the column and that the puddle of oil between the column and the dumpster was approximately 30 inches in diameter and amber in color. His findings were recorded in a report made within 15 to 20 minutes of visiting the loading dock.

While at La Salle Plaza, Yedor and Turro notified a security guard on the premises, Stanley Yurks, of Yedor's injury and the presence of an oil spill on the loading dock. Yurks stated Yedor showed him the location of the oil and that Yurks cleaned the area "very thoroughly" with three rags, leaving only an oil stain on the pavement. Yurks recalled that: the puddle of oil was dark brown in color and approximately 1 to 1½ feet in diameter; approximately 3½ feet separated the dumpster and the column; and the open-top dumpster next to the puddle of oil was red and filled "right to the top" with trash. Yurks saw no oil on the dock the day preceding the accident. He was not on the dock the day of Yedor's injury prior to notification by Yedor of his fall.

Also adduced at trial was the testimony of several Ace Division employees. From their occasionally conflicting testimony, the jury could have believed the facts which follow. Ace Division customarily

picked up and delivered its open-top dumpsters at the La Salle Plaza loading dock in the morning, usually between 6 a.m. and 8 a.m. The roll-off type trucks used by Ace Division to deliver and pick up its open-top dumpsters at La Salle Plaza hold from 70 to 80 gallons of hydraulic oil. The trucks are equipped with more than 100 feet of hydraulic lines. Each such truck had four hydraulic cylinders as part of its mechanism. Little, if any, hydraulic preventive maintenance was performed on the roll-off type trucks. Other types of preventive maintenance were done on the trucks; however, many items listed on the company's preventative maintenance schedule would not be checked by the mechanics. Ninety percent of the inspection of a roll-off truck accomplished by Ace Division mechanics was visual and was done on those points visible to the eye. The hydraulic oil levels in Ace Division's trucks were not checked on a daily basis. Contrary to their drivers' testimony, Ace Division's maintenance shop foreman testified the drivers would not inspect the hydraulic lines on their trucks. A roll-off type truck can lose from 15 to 20 gallons of hydraulic oil and still function. A pinhole leak in the hydraulic line of a truck in operation would cause a large spray of oil, but only a drip if the system was not in operation. Leaks could also develop in the packing surrounding hydraulic cylinders on the trucks and, depending on the size of the leak, would produce a puddle 1½ feet wide in from 1 to 20 minutes.

In backing trucks onto the four- or five-inch-high loading dock, one or both rear wheels, approximately 3½ feet of the truck, would extend onto the dock. Some trucks were backed up on an angle, often bringing one side of a truck's rear end four to five feet north of the south edge of the dock. One of Ace Division's drivers made a trip to La Salle Plaza on Tuesday, April 13, 1982, the date of the accident, but did not recall whether or not he saw an open-top dumpster there or whether or not he backed his truck onto the dock that day.

Ace Division's roll-off truck dispatcher at the Ace Division garage in April 1982 testified that Ace Division did not bill its customers for delivery service and therefore kept regular records of pickups only. In examining the trip cards of Ace Division's drivers servicing La Salle Plaza in April 1982, the dispatcher found no record, between April 12, 1982, and April 23, 1982, as to when a 20-yard open-top dumpster picked up at the La Salle Plaza dock on April 23 was delivered.

Steven Drake, an investigator hired by Yedor, visited the loading dock two days following Yedor's accident. From a diagram received in evidence, he pointed to an area between a dark green or black dumpster and a support column, where he found a blotch or stain of oil,

about one by two feet in diameter. He placed two paper towels on the stain and rubbed them, collecting oil on the towels which was yellow in color. The towels were then placed in plastic envelopes. He saw no other oil on the dock pavement.

A chemist, Dr. Lee Nylander, analyzed the oil collected in Drake's paper towel samples and found it to be petroleum based, consistent with hydraulic or motor oils, but not animal or vegetable oils.

██ █ Ace Division disputes the strength of Centre's evidence that only its truck could be responsible for spilling oil on the dock and contends that a non-Ace Division vehicle might just as equally have been responsible for such a spill. The existence of a fact may not be inferred from evidence when the existence of another fact inconsistent with the first can be inferred with equal certainty from the same evidence. (*Paul Harris Furniture Co. v. Morse* (1956), 10 Ill. 2d 28, 37-38, 139 N.E.2d 275; *Lewis v. Mount Greenwood Bank* (1980), 91 Ill. App. 3d 481, 486-87, 414 N.E.2d 1079; *McKinney v. Illinois Power Co.* (1960), 26 Ill. App. 2d 193, 203, 167 N.E.2d 249; *Coffin v. Chicago City Ry. Co.* (1929), 251 Ill. App. 169, 174-75.) The evidence here precludes inferences of equal strength; the testimony tended to prove not only that the oil was of a type found in a vehicle, but also that the Ace Division dumpster, clearly identified by two witnesses, was only three to four feet from the pillar, making a deposit of oil between them by another truck impossible.

The fact that Centre relied heavily on circumstantial evidence to prove Ace Division's liability does not necessarily weaken Centre's claim. Circumstantial evidence is not inferior to direct evidence; it is the jury's prerogative to determine the weight to be given any evidence before it. *Legerski v. Nolan* (1971), 132 Ill. App. 2d 51, 54, 265 N.E.2d 696; see also *McKanna v. Duo-Fast Corp.*, 161 Ill. App. 3d at 527.

From the foregoing, we find no error in the circuit court's denial of Ace Division's motions for directed verdict and judgment notwithstanding the verdict.

### III

Ace Division further urges that remarks made by counsel for Centre in his opening statement prejudiced the proceedings and denied the defense a fair trial.

██ Comments by an attorney in an opening statement concerning evidence to be introduced at trial are not improper if made in good faith and with reasonable belief the evidence is admissible, although the intended proof referred to is later excluded. (*Gillson v. Gulf, Mo-*

*bile & Ohio R.R. Co.* (1969), 42 Ill. 2d 193, 197, 246 N.E.2d 269; *Charpentier v. City of Chicago* (1986), 150 Ill. App. 3d 988, 997, 502 N.E.2d 385; *Fedt v. Oak Lawn Lodge, Inc.* (1985), 132 Ill. App. 3d 1061, 1071, 478 N.E.2d 469; *Schwedler v. Galvan* (1977), 46 Ill. App. 3d 630, 640, 360 N.E.2d 1324.) In the absence of good faith, however, or where prejudice is clearly shown, the rule is to the contrary. *Schwedler v. Galvan*, 46 Ill. App. 3d at 640.

■ In the case *sub judice*, counsel for Centre asserted in his opening remarks that he would produce a maintenance employee of La Salle Plaza to testify that he had seen Ace Division trucks leaking hydraulic oil on the loading dock. This line of questioning, which was not the subject of any pretrial motions, was later denied the Centre attorney by the court. It thus appears Centre intended in good faith to adduce the promised testimony; moreover, the record reveals no cause why Centre's counsel could not reasonably have believed the statement to be admissible. The circuit court admonished the jury that argument by counsel did not constitute evidence. Counsel for Ace Division, during its own closing argument, noted Centre's failure to produce the promised witness. The questioned remarks, therefore, ultimately could have been more harmful to Centre than to Ace Division. (See *Bucyna v. Rizzo Brothers Movers, Inc.* (1961), 31 Ill. App. 2d 31, 36, 175 N.E.2d 640.) Such a statement might inflict minor damage on an opponent's case; however, the fact that the assertion was made only once, and the benign nature of the utterance, dulled any prejudicial effect the statement might have had, rendering a new trial unnecessary. See *Gillson v. Gulf, Mobile & Ohio R.R. Co.*, 42 Ill. 2d at 200; *McCarthy v. Spring Valley Coal Co.* (1908), 232 Ill. 473, 479-80, 83 N.E. 957; *Colmar v. Greater Niles Township Publishing Corp.* (1957), 13 Ill. App. 2d 267, 273-74, 141 N.E.2d 652.

## IV

Ace Division urges error in the admission into evidence, over its objection, of Centre's exhibits 19 and 20 and testimony regarding them. These exhibits, consisting of the paper towels used by Drake to rub the residual oil stain he found on the loading dock two days after Yedor's fall and the vials of oil extracted from the towels, are claimed to have been incompetent for lack of a proper foundation establishing that the oil is the same oil on which Yedor slipped.

■ Physical objects and testimony based on post-event inspection of those objects are ordinarily inadmissible unless the proponent produces evidence showing that the objects and conditions inspected remained essentially unchanged in the interim. *Leveck v. Consolidated*

*Rail Corp.* (1986), 148 Ill. App. 3d 118, 129, 498 N.E.2d 529; *Moore v. Farmers Insurance Exchange* (1982), 111 Ill. App. 3d 401, 411, 444 N.E.2d 220; *Canales v. Dominick's Finer Foods, Inc.* (1981), 92 Ill. App. 3d 773, 778, 416 N.E.2d 303; *Escher v. Norfolk & Western Ry. Co.* (1979), 77 Ill. App. 3d 967, 972, 397 N.E.2d 9; *Cheek v. Avco Lycoming Division* (1977), 56 Ill. App. 3d 217, 220, 371 N.E.2d 994.

Here, Centre relies on Drake's assertion that he recalled having seen no oil on the dock platform except near a support column on the dock where Yedor fell. He obtained the oil samples from the remaining oil "blotch" lying between a support column and a dumpster, the location of which he identified on a diagram of the dock admitted in evidence. No vehicle could have fit into this space to deposit hydraulic or motor oil, Centre continues, therefore the oil "blotch" could have been the residue of the oil puddle in which Yedor slipped. There was other testimony that the dumpster was red in color and bore the name "Ace Disposal." Ace Division did not pick up any dumpster from La Salle Plaza's dock between the time Yedor fell in the puddle of oil between the support column and dumpster and the time Drake gathered his oil samples. Nor was there any evidence that La Salle Plaza employees did any further cleaning in his area beyond Yurks' initial efforts to wipe up the oil.

■■■ When it can be shown that the nature of a condition and the surrounding circumstances permit a reasonable inference that the condition existed at the time of an alleged accident, such evidence is admissible for consideration by a jury for whatever weight that fact finder chooses to give it. (*Noncek v. Ram Tool Corp.* (1970), 129 Ill. App. 2d 320, 326-27, 264 N.E.2d 440; *Gass v. Carducci* (1962), 37 Ill. App. 2d 181, 190, 185 N.E.2d 285.) In *Friesland v. City of Litchfield*, 24 Ill. App. 2d at 397, the court ruled admissible testimony of plaintiff's expert concerning the toxicity of water samples extracted from a creek running through plaintiff's property two months after sewage in the creek allegedly injured plaintiff's livestock. The court found that the expert's testimony, combined with that of a State health inspector and the remainder of plaintiff's evidence, "[constituted] a connected chain of evidence" from which the jury could "evaluate [the] weight [of the evidence]."

No error is found in the circuit court's admission into evidence of the questioned exhibits and testimony.

## V

Ace Division's last argument claims that the circuit court erred in giving Centre's issues instruction 1A, containing its theory of negli-

gent maintenance of Ace Division's trucks, and in refusing Ace Division's issues instruction 13, which was silent on the question of negligent maintenance.

 █ Giving or denying a jury instruction is discretionary with the court, and a new trial may be granted for refusal to give an instruction only where serious prejudice to a party's right to a fair trial has been shown. (*In re Estate of Loesch* (1985), 134 Ill. App. 3d 766, 771, 481 N.E.2d 32.) Reversible error in giving an instruction occurs where the instruction is unsupported by some evidence. (*In re Estate of Loesch*, 134 Ill. App. 3d at 771; *Wilson v. Chicago Transit Authority* (1983), 118 Ill. App. 3d 714, 720, 455 N.E.2d 195; *Falkenthal v. Public Building Comm'n*, (1982), 111 Ill. App. 3d 703, 709, 444 N.E.2d 498.) Centre's issues instruction 1A, derived from IPI Civil 2d No. 600.09 (Illinois Pattern Jury Instructions, Civil, No. 600.09 (2d ed. Supp. 1986)), stated in critical part:

"Centre Properties claims that Ace Disposal Division of Waste Management of Illinois, Inc. was negligent in one or more of the following respects:

(a) Negligently delivered a dumpster on the loading dock so as to cause oily substances to be on the surface of the loading dock.

(b) Negligently maintained its trucks and delivery apparatuses so as to allow fluids to escape from the truck's [*sic*] hydraulic systems while on the loading dock."

There was evidence here as to the proximity of an oil puddle to one of Ace Division's dumpsters and that the substance was probably an effluence from a vehicle. Other evidence tended to prove that: maintenance by Ace Division of its trucking fleet was questionable; its truck drivers did not conduct the daily maintenance checks required; Ace Division's drivers backed their trucks onto the loading dock in servicing La Salle Plaza; and an Ace Division truck delivered a dumpster to the building at some time very near the date of Yedor's accident. This evidence supports the tendering of Centre's issues instruction to the jury. See *Darby v. Checker Co.* (1972), 6 Ill. App. 3d 188, 195-96, 285 N.E.2d 217; *Shore v. Turman* (1965), 63 Ill. App. 2d 315, 321, 210 N.E.2d 232.

There was considerable conflicting evidence adduced in the case at bar. Ace Division's argument that the conflicts tended to confuse the jury and rendered the court's instructional choice reversible error does not persuade. Rather, the court avoided confusion and, ultimately, prejudicial error, by presenting only Centre's instruction to the jury and not adding Ace Division's preferred instruction to it,

which was within the court's discretion.

In addition to the instruction above quoted, other instructions told the jury that: (1) it should return a verdict in Centre's favor only if Centre proved each of the propositions it was required to prove; (2) it should consider only the testimony and exhibits in evidence; and (3) a verdict for Centre was appropriate only if Centre met the requisite burden of proof, which the court also explained to the jury. These additional instructions cured whatever error could be said to have resulted from the inclusion of Centre's instruction 1A in this case. (*Reivitz v. Chicago Rapid Transit Co.* (1927), 327 Ill. 207, 212-13, 158 N.E. 380.) In their entirety, the instructions stated the law fairly, accurately and in a manner not misleading to the jury. See *Duffy v. Cortesi* (1954), 2 Ill. 2d 511, 515-16, 119 N.E.2d 241; *Smith v. Verson Allsteel Press Co.* (1979), 74 Ill. App. 3d 818, 827, 393 N.E.2d 598; *Burns v. Stouffer* (1951), 344 Ill. App. 105, 111-12, 100 N.E.2d 507.

For the foregoing reasons, we find no basis upon which to interfere with the disposition of this case by the jury verdict or by the circuit court's rulings. Accordingly, we are obliged to affirm.

Affirmed.

SCARIANO and EGAN, JJ., concur.