ARNITA ROBINSON, Plaintiff-Appellee, *v.* CHICAGO TRANSIT AUTHORITY *et al.*, Defendants-Appellants.

First District (3rd Division)    No. 76-653

Opinion filed March 14, 1979.

1004

Sal M. Bianchi, John J. O'Toole, and Michael A. Gerrard, all of Chicago, for appellants.

Robert Q. Hoyt and William J. Harte, both of Chicago, for appellee.

Miss JUSTICE McGILLICUDDY delivered the opinion of the court:

Arnita Robinson filed suit against Carl Myers and his employer, the Chicago Transit Authority (C.T.A.), seeking damages for injuries she incurred in a traffic accident allegedly caused by the negligence of the defendants. A jury returned a verdict in Robinson's favor and awarded her $150,000 in damages. The defendants now appeal that judgment contending (1) that the plaintiff failed to prove that the defendants' negligence was the proximate cause of the collision, and (2) that Robinson failed to prove that her present physical condition was caused by the accident.

At approximately 6 p.m., on Thursday, January 22, 1970, Robinson was driving her car westbound on Jackson Boulevard near Kedzie Avenue in Chicago, and Myers was driving a bus owned by the C.T.A. eastbound on Jackson in the same vicinity. The streets were snow-covered. As Myers approached Kedzie a car in front of him, operated by Mr. Jesse Gardner, stopped to make a left turn into a gas station. Myers testified that when he saw that the Gardner vehicle was stopping he was approximately 120 feet behind Gardner and was traveling about 10 to 15 miles per hour. Myers pumped or "fanned" the brakes, but did not stop the bus. The bus was traveling about five miles an hour when it struck the rear of the Gardner automobile. Myers described the impact between Gardner's car and the bus as a slight bump but he also testified that the impact caused Gardner's car to enter the westbound lane of Jackson where it collided with Robinson's car.

As a result of the collision, Robinson struck her head on the dashboard and her back on the transmission hump in her car. The following morning she visited Dr. Linderman because her head, neck and back were hurting. She also stated that she had a bump on her head although she could not recall its location. The doctor massaged her back and gave her some pills. Her head hurt for about four days following the accident and she was able to return to work at Ryerson Steel Company on the following Monday. In late March 1970 Robinson noticed that she was having difficulty walking. She consulted a number of doctors although none of them could eliminate the problem. In April, May and June 1970 she noticed a numbness in her hand. In August 1970 it was determined that she was suffering from multiple sclerosis. Her condition has continued to deteriorate. At the time of trial, she was confined to a wheel chair.

Robinson also testified that she had experienced some physical problems prior to the accident. In 1968, while attending college, she had difficulties in seeing the blackboard on about two occasions, and she had trouble walking. In 1969, after being employed at Ryerson, she consulted with the firm's nurse about the problems she was having with her eyes.

Robinson and the defendants each presented two expert witnesses to testify regarding multiple sclerosis. Dr. Benjamin Kesert testified for the plaintiff. He was a graduate of the University of Illinois College of Medicine and did post-graduate study in neurology and psychiatry at Northwestern University Medical School. At the time of trial he was an assistant professor emeritus in neurology at Northwestern.

Dr. Kesert explained that multiple sclerosis is characterized by the hardening of portions of the central nervous system. While the causes of the disease are unknown, its symptoms usually follow one of three clinical courses. The benign course results in only mild symptoms; in this form, the disease has no significant disabling effect upon the afflicted individual. In the fulminating or malignant form, the symptoms of the disease progress rapidly and have a severe disabling effect upon the victim. The third course is the recurring form where the afflicted person alternates between periods of progression and regression of the symptoms.

Dr. Kesert further stated that a trauma to the head or back may alter the course of the disease from the benign to a more serious form. A trauma, he explained, can result in the constriction of the blood vessels and the occurrence of microscopic hemorrhages. The result is a "necrosis" or deadening of parts of the central nervous system. He stated that a bump to the head could be sufficient to cause an aggravation of the disease.

Dr. Kesert examined Robinson and concluded that she was suffering from the fulminating form of multiple sclerosis. Pursuant to a hypothetical question, Dr. Kesert stated that, in his opinion, "as a result of the trauma, [the] automobile accident could or might have [sic] an aggravation of the disease of multiple sclerosis."

The plaintiff's second expert was Dr. Leonard Arnold. Dr. Arnold was a graduate of the Chicago Medical School. Since 1947, when he was first licensed as a physician, he has practiced as a general practitioner, except for the period between 1952 and 1954 when he served with the Armed Forces. His service with the military included approximately 20 months of neurological work during which time he saw about 8 to 20 patients who were diagnosed as having multiple sclerosis. In addition, in the five years prior to trial, he saw 10 to 12 cases of multiple sclerosis.

Dr. Arnold testified that multiple sclerosis primarily attacks the white matter of the nervous system, particularly the covering of the nerve called the myelin sheath. The disease causes this sheath to disintegrate or to become "demyelinized." He also described the three courses which the disease normally follows and testified that trauma could produce an exacerbation of the symptoms. From his original examination of Robinson in July 1973, Dr. Arnold concluded that she was suffering from multiple sclerosis but he could not determine the type. Following a

second examination, in February 1974, he believed she had the fulminating type. Through a hypothetical question, Dr. Arnold expressed his opinion that prior to the accident, the patient was suffering from a mild form of multiple sclerosis and that the trauma suffered during the accident aggravated the course of the disease into a more serious form.

On cross-examination, Dr. Arnold testified that Robinson had been involved in "accidents" prior to January 22, 1970, including one in which she had suffered a broken clavicle. He recalled that this accident occurred when she was a child. Defense counsel then handed him the hospital records from August 1970, which contained a recitation of Robinson's medical history. Dr. Arnold testified that this history indicated that the clavicular fracture occurred "three years prior to that admission [in 1970]." On redirect examination, Dr. Arnold indicated that he could not tell whether the entry into the hospital records read "three years of age" or "three years ago" and reiterated his belief that she broke her clavicle when she was a child.

Dr. Alex Arieff testified for the defendants. Dr. Arieff graduated from Northwestern University Medical School in 1932. He took post-graduate training in neurology and psychiatry and is a certified specialist in both areas. At the time of trial he was professor of neurology at Northwestern.

Dr. Arieff gave a description of the nature of multiple sclerosis similar to that provided by the plaintiff's witnesses. However, he stated that there is no evidence that trauma can exacerbate the disease. He testified that severe injury to the central nervous system could produce an aggravation of the symptoms of the disease, but that any such injury would be immediately apparent to an examining physician following the trauma. Pursuant to a hypothetical question, he stated that, under the facts in this case, there was no relation between "the condition of the patient * * * and the alleged injury."

Dr. Eric Oldberg also testified for the defendants. He graduated from Northwestern University Medical School in 1927. He studied in Germany and England following the completion of his medical education and internship. Dr. Oldberg is a certified specialist in the area of neurology. He served for 41 years as the head of the departments of neurology and neurological surgery at the University of Illinois.

After describing the nature of multiple sclerosis, Dr. Oldberg stated that trauma could only cause an aggravation of the symptoms of the disease if the trauma was severe enough to cause additional injury to the already damaged nerves. The condition of the blood supply, he stated, has no relation to the disease. In response to a hypothetical question, Dr. Oldberg testified that the facts of this case present a "textbook" example of multiple sclerosis and that the trauma suffered by the patient in the January 22, 1970, accident had no effect upon her condition.

In contending that Robinson failed to establish that Myers' negligence was the proximate cause of collision, the defendants raise two arguments. First, they assert that the plaintiff failed to prove that Myers was negligent. Secondly, they contend that Myers' actions merely furnished a condition by which the accident was made possible and therefore was not the proximate cause of the occurrence.

■■ A driver approaching another vehicle from the rear has a duty to maintain a safe lookout and must take into account the prospect of having to stop his vehicle suddenly. (*Apato v. Be Mac Transport Co.* (1972), 7 Ill. App. 3d 1099, 288 N.E.2d 683; *Ferguson v. Zeman* (1969), 109 Ill. App. 2d 417, 248 N.E.2d 731.) This duty clearly extends to drivers riding in adjacent lanes. (*Sughero v. Jewel Tea Co.* (1967), 37 Ill. 2d 240, 226 N.E.2d 28; *Ebel v. Collins* (1964), 47 Ill. App. 2d 327, 198 N.E.2d 552.) Whether Myers was negligent in his execution of this duty was a question of fact to be determined by the jury and, as a reviewing court, we will not disturb that determination unless it is contrary to the manifest weight of the evidence. *Tipsword v. Melrose* (1973), 13 Ill. App. 3d 1009, 301 N.E.2d 614.

■ The bus driven by Myers struck the Gardner vehicle from the rear. Although the impact was not great, Myers testified that it caused the Gardner car to enter the westbound lane of Jackson Boulevard. Although the street was snow-covered, there is no evidence that the bus skidded; rather, Myers testified that he had no problem prior to the accident in stopping the bus. Myers claimed that he was 120 feet behind Gardner when he saw Gardner stop and that he did not forcefully apply the brakes and stop the bus, but rather "fanned" the brakes. The jury could thus reasonably conclude that Myers did not allow himself a sufficient stopping distance. We, therefore, believe that the jury's conclusion that Myers was negligent was not contrary to the manifest weight of the evidence.

■ The defendants' argument that Myers' actions merely created a condition within which other factors operated to cause the accident is premised upon the view that the abrupt stop by Gardner was an independent, intervening cause of the collision. However, to relieve the defendants of liability, the intervening cause must have been unforeseeable. (*Felty v. New Berlin Transit, Inc.* (1978), 71 Ill. 2d 126, 374 N.E.2d 203.) Since we believe that it would be clearly foreseeable to an operator of a vehicle that a car he was following may suddenly stop to make a left turn into a gas station, we also reject this argument.

The defendant also complains that Robinson failed to establish a causal relationship between the January 22, 1970, accident and her present condition of multiple sclerosis. It is Robinson's theory that prior to the accident she was suffering from the benign form of multiple sclerosis.

She claims that the trauma she received during the accident aggravated this benign form into either the recurring or fulminating form. The defendants assert that under the evidence offered at trial, this theory remains conjectural. They argue that Dr. Arnold's testimony is discredited because he, unlike the other experts, was not a specialist in neurology but rather was a general practitioner. They suggest that the broken clavicle, which Robinson suffered in a prior accident, is the more probable cause of the aggravation of the disease.

■■ It was the opinion of the plaintiff's experts that the trauma suffered in the January 22, 1970, accident aggravated or could have aggravated the disease while the defendants' experts concluded that there was no relationship between Robinson's present condition and the trauma. The existence of this conflict in the medical testimony did not render the plaintiff's proof speculative. As stated in *National Castings Division of Midland-Ross Corp. v. Industrial Com.* (1973), 55 Ill. 2d 198, 302 N.E.2d 330:

> "Where * * * there exists limited medical knowledge of a malady, we have recognized that medical testimony pertaining to causation may not be unqualified and unequivocal."

(See also *Dixon v. Industrial Com.* (1975), 60 Ill. 2d 126, 324 N.E.2d 393.) Where there is a conflict in the testimony of expert medical witnesses, the credibility of those experts is for the jury to determine. (*Soberalski v. Chicago, Rock Island & Pacific R.R. Co.* (1975), 29 Ill. App. 3d 1019, 331 N.E.2d 645.) The jury was not required to discount the testimony of Dr. Arnold simply because he was not a neurological specialist. He gained experience with the disease both during his service with the Armed Forces and during his subsequent career as a private practitioner. In addition to the credentials of an expert witness which the jury may consider in weighing a witness' testimony, it may also consider the reasons offered for the conclusions and the factual details offered in support of the opinion. (*Mullen v. General Motors Corp.* (1975), 32 Ill. App. 3d 122, 336 N.E.2d 338.) Dr. Kesert's testimony was not speculative because he phrased his opinion in terms that the accident "could or might" have aggravated the course of the disease. The jury could reasonably infer from this statement that the trauma suffered by Robinson on January 22, 1970, was capable of causing an aggravation of the multiple sclerosis. The evidence as to when the plaintiff suffered a broken clavicle is equivocal so the jury could have concluded that it was a childhood injury and thus was too remote in time to have affected the multiple sclerosis, and that it was not the probable cause of Robinson's present condition. Therefore, we believe that there is sufficient evidence to support the jury's conclusion that the accident of January 22, 1970, caused an aggravation of the disease.

For the foregoing reasons, the judgment of the Circuit Court of Cook County is affirmed.

Affirmed.

SIMON, P. J., and McNAMARA, J., concur.