ROBERTA SELDIN *et al.*, Plaintiffs-Appellants, v. DONALD BABENDIR, Defendant-Appellee.

First District (5th Division) No. 1—00—0069

Opinion filed October 12, 2001.—Rehearing denied November 8, 2001.

Alvin W. Block & Associates, of Chicago (Jerome E. Boyle, of counsel), for appellants.

Henderson & Lyman, of Chicago (Mark M. Lyman and David T. Meehan, of counsel), for appellee.

JUSTICE REID delivered the opinion of the court:

Roberta and Harold Seldin (Roberta, Harold, and collectively as the Seldins) sued Donald Babendir (Donald) to recover damages they suffered in an automobile accident while they were passengers in a car driven by him. Following a jury trial, the jury returned a verdict in Donald's favor and against the Seldins. We affirm for the following reasons.

## THE FACTS

On the evening of June 5, 1994, Donald was driving his 1993 Toyota Camry northbound on the Edens Expressway. With him in the car were his wife, Carol, and his friends the Seldins. The Seldins were in the backseat while the Babendirs were in the front. They were traveling north on the Edens Expressway. At the time of the accident, the car was in the center lane, surrounded on the right by a traffic lane and the shoulder and on the left by a traffic lane, a shoulder and a concrete median separating northbound from southbound traffic. The evening was clear and the roadway was dry and in good condition. The car was traveling at approximately 55 miles per hour. Donald testified he had both hands on the steering wheel and, even though there was conversation in the car, he was not distracted in any way prior to the accident.

At the time of the accident, Donald's view of the road was not obstructed. His lane was empty, other than his car, as was the lane to his left. There were no cars behind Donald, but there were cars in the right lane approximately four car lengths ahead of his car. As Donald's car was slowly overtaking the slower moving car in front of it in the right lane, that car abruptly merged into Donald's lane without a signal to indicate that movement was imminent. At the time of the merge, when the other car was approximately six feet in front of Donald's car, Donald was surprised, making a sharp left turn and slamming on his brakes. Donald testified he felt he would have struck

the other vehicle had he remained in the center lane. Donald, now moving almost perpendicular to the flow of traffic, passed through the left lane and struck the cement wall. Donald also testified that he felt he would not have avoided a collision with the other car simply by applying his brakes, slowing down his vehicle.

Donald's car was totaled. Harold's injuries required surgery, resulting in $49,286.38 in medical expenses which he claims caused his practice as an optometrist to suffer. Roberta's hand was injured, resulting in six weeks in a cast and $1,956.75 in medical expenses. Dr. Jay Levin, a consulting doctor hired at the request of Babendir's counsel, gave his prognosis that Harold's shoulder now had limited motion and the shoulder should remain static. He also concluded that there should be no limitation on either daily activity or professional work.

The Seldins filed their complaint in the circuit court of Cook County on March 7, 1995. The complaint alleged that Donald negligently operated his vehicle by failing to keep it under control. Donald filed his answer to the complaint on May 18, 1995. The answer denied the allegations of negligence and asserted the affirmative defense that the actions of the other driver were the sole proximate cause of the Seldins' injuries.

Trial commenced on July 1, 1999. During *voir dire*, counsel for the Seldins asked potential jurors whether they had any friends or relatives that are lawyers, claims investigators, insurance adjusters or had any connection to the insurance industry. Donald's lawyer objected to this line of questioning. The trial court barred further questioning along those lines and promised to give an instruction that whether a party was insured had no bearing on the case at bar. The proposed instruction was objected to by Donald's lawyer, so it was never given. The Seldins argue that the information sought was necessary so they could effectively use their juror challenges. Donald responds that the questions were properly restricted because anything that informs the jurors that the parties have insurance is inadmissible on relevancy grounds.

During the trial, part of Harold's deposition was introduced during his cross-examination. That part read as follows:

> "The accident occurred as we were driving north on the Edens expressway and we had just passed Peterson. We were driving in the middle lane. There were two cars on the right and the second car on the right moved into the middle lane and that caused the accident."

Counsel for the Seldins tried to get more of the quote read to the jury on redirect examination. The trial court denied that request, ruling that Harold had already testified to the information contained in the

testimony sought to be read. In the disputed portion, Harold expressed his opinion as to the cause of the accident. He testified:

> "It precipitated a movement by the car we were driving in which eventually led to this car that we were driving in hitting the center wall on the Edens expressway."

The trial court refused to allow that portion read to the jury and ordered it stricken when counsel for the Seldins referred to it in closing argument. The trial court specifically found that "he's already testified to that."

Both sides presented motions for directed verdict which were denied. The jury then rendered a general verdict for Donald and against the Seldins from which this appeal followed. The Seldins argue on appeal that Donald simply panicked and lost control of his vehicle, overreacting to the events. They seek either an outright reversal of the jury verdict or, in the alternative, a new trial.

Donald argues that he was in control of his vehicle and breached no duty to the Seldins. He claims he was properly operating his vehicle when he was cut off by the other car. He claims he adequately explained the cause of why his vehicle was forced out of the center lane, that being the negligence of the other car, which abruptly switched lanes without any signals.

## DISCUSSION

### I

A directed verdict is a complete removal of an issue from the province of the jury. *Mohn v. Posegate*, 184 Ill. 2d 540 (1998). A trial court should enter a directed verdict only where " 'all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand.' " *Stiff v. Eastern Illinois Area of Special Education*, 279 Ill. App. 3d 1076, 1081-82 (1996), quoting *Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill. 2d 494, 510 (1967). " 'The direction of a verdict does not require a complete absence of evidence of the side against which the verdict is directed, for the right to resolution of issues by the jury exists only if there are factual disputes of some substance.' " *Green v. Jackson*, 289 Ill. App. 3d 1001, 1009 (1997), quoting *Poelker v. Warrensburg-Latham Community Unit School District No. 11*, 251 Ill. App. 3d 270, 276 (1993). In denying the motions for directed verdict and allowing the matter to proceed to the jury, the trial court *sub silencio* found the case sufficiently closely balanced so as to preclude resolution without the jury. We can find no basis for upsetting the denial of those motions.

The jury found that the cause of the Seldins' injuries was the

driver of the other car and not Donald. We agree. "To determine whether a duty exists in a certain instance, a court considers the following factors: (1) the reasonable foreseeability of injury, (2) the likelihood of injury, (3) the magnitude of the burden of guarding against the injury, and (4) the consequences of placing that burden upon the defendant." *Jones v. Chicago HMO Ltd. of Illinois*, 191 Ill. 2d 278, 303 (2000), citing *Deibert v. Bauer Brothers Construction Co.*, 141 Ill. 2d 430, 437-38 (1990). "Lastly, the existence of a duty turns in large part on public policy considerations." *Jones*, 191 Ill. 2d at 303-04, citing *Ward v. K mart Corp.*, 136 Ill. 2d 132, 151 (1990). "A driver approaching another vehicle from the rear has a duty to maintain a safe lookout and must take into account the prospect of having to stop his vehicle suddenly." *Robinson v. Chicago Transit Authority*, 69 Ill. App. 3d 1003, 1008 (1979). "This duty clearly extends to drivers riding in adjacent lanes." *Robinson*, 69 Ill. App. 3d at 1008. Here it was entirely foreseeable that a car in an adjacent lane would suddenly switch lanes. Courts have historically held that drivers on the roadways of Illinois are supposed to drive defensively, ever vigilant to those foreseeable possibilities. "Whether [a driver] was negligent in [the] execution of [his or her driving duties] was a question of fact to be determined by the jury and, as a reviewing court, we will not disturb that determination unless it is contrary to the manifest weight of the evidence." *Robinson*, 69 Ill. App. 3d at 1008, citing *Tipsword v. Melrose*, 13 Ill. App. 3d 1009 (1973).

The question of proximate cause is ordinarily a question for the jury. *Felty v. New Berlin Transit, Inc.*, 71 Ill. 2d 126, 130 (1978). "[I]t is the province of the jury to resolve conflicts in the evidence, to pass upon the credibility of the witnesses, and to decide what weight should be given to the witnesses' testimony." *Maple v. Gustafson*, 151 Ill. 2d 445, 452 (1992). "A trial court cannot reweigh the evidence and set aside a verdict merely because the jury could have drawn different inferences or conclusions, or because the court feels that other results are more reasonable." *Maple*, 151 Ill. 2d at 452, citing *Tennant v. Peoria & Pekin Union Ry. Co.*, 321 U.S. 29, 35, 88 L. Ed. 520, 525, 64 S. Ct. 409, 412 (1944). "Likewise, the appellate court should not usurp the function of the jury and substitute its judgment on questions of fact fairly submitted, tried, and determined from the evidence which did not greatly preponderate either way." *Maple*, 151 Ill. 2d at 452-53, citing *Brendel v. Hustava*, 97 Ill. App. 3d 792, 799-800 (1981); *Ford v. Baker*, 61 Ill. App. 3d 45, 48 (1978); *Koris v. Norfolk & Western Ry. Co.*, 30 Ill. App. 3d 1055, 1058 (1975); *Johnson v. Princeville Community High School District 206*, 65 Ill. App. 2d 487, 493 (1965).

## II

 We next address the claims of prejudicial error. The trial court refused to allow the Seldins to inquire whether the prospective jurors had any interest in or connection to the insurance industry. Generally, evidence informing a jury that a defendant is insured against liability is inadmissible on grounds of relevance. *Ross v. Aryan International, Inc.*, 219 Ill. App. 3d 634, 643 (1991), citing *Imparato v. Rooney*, 95 Ill. App. 3d 11, 15 (1981). "However, '[n]ot every mention of the word "insurance" during a personal injury trial requires the court to declare a mistrial.' " *Neyzelman v. Treitman*, 273 Ill. App. 3d 511, 514-15 (1995), quoting *Twait v. Olson*, 104 Ill. App. 3d 191, 196 (1982). A reference to insurance is prejudicial if it directly indicates the defendant is insured. *Neyzelman*, 273 Ill. App. 3d at 515, citing *Fedt v. Oak Lawn Lodge, Inc.*, 132 Ill. App. 3d 1061, 1070 (1985). It is also prejudicial if the mention of insurance is the product of conduct by counsel intended to influence or prejudice the jury. *Neyzelman*, 273 Ill. App. 3d at 515, citing *Mondelli v. Checker Taxi Co.*, 197 Ill. App. 3d 258 (1990). An exception to the rule against informing the jury the parties have insurance is that plaintiff, in good faith, can interrogate prospective jurors on their *voir dire* as to their interest and relationship to insurance companies. *Ross*, 219 Ill. App. 3d at 643, citing *Imparato*, 95 Ill. App. 3d at 15.

During the *voir dire*, the following interchange took place:

"THE PLAINTIFF: *** Does anybody in this group have any friends or relatives that are lawyers, claims investigators, insurance adjusters, anybody involved in these actions?

THE COURT: Sidebar, sidebar, sidebar.

(The following proceedings were held outside the presence of the jury:)

THE COURT: Sir, do you have a motion?

THE DEFENSE: Your honor, on behalf of the defendant I'm moving for a mistrial and asking that the entire venire be dismissed. I think, first of all, that counsel's question inquiring about insurance was improper. There was not one witness other than a man who was excused by this court who said his mother worked for State Farm, and the court adequately properly investigated whether or not he would—that would create any bias on his behalf. I let counsel go when he inquired about a claims adjuster. For counsel to get up and inquire whether anybody is involved or knows anybody that works in the insurance industry I think is improper, and I'm asking for a mistrial. In support of that, your honor, I think this court should consider the delicate facts and unique facts in this case, that you have two very close friends, two plaintiffs suing a very close friend, and I think it's something that

counsel should have considered before he inquired with the jury during voir dire, and I'm asking for a mistrial.

THE COURT: Go ahead. What do you have to say?

THE PLAINTIFF: I think the question that was put to the jurors, whether they have any friends or relatives that are insurance investigators or claim adjusters, is a proper and necessary question to determine if these people can fairly hear this question. There is nothing magical about mentioning the word insurance in a lawsuit. That industry is not entitled to anything special. Certainly I am not going to ask any party if they have insurance, but certainly about the mind-set of these people to know if they or anybody else is a claims adjuster or insurance investigator is a proper and necessary question.

THE COURT: Anything further?

THE PLAINTIFF: No sir.

THE COURT: Anything further?

THE DEFENSE: Yes, your honor. I don't think that it's proper, and more importantly, I don't think it's necessary. I don't see any basis for inquiring about insurance, particularly from the plaintiffs' standpoint, your honor.

THE COURT: Well, I'm going to give them the instruction in the Illinois pattern jury instructions which reads whether a party is insured has no bearing whatsoever on any issues that you must decide; you must refrain from any inference, speculation, or discussion about insurance. I'm going to given [sic] them that particular instruction at the time to the entire voir dire. Now, I want to tell you something. You are a very busy man, sir. We had a conference here which you didn't attend on picking a jury and what I wanted. Now, the fact that you're so busy that you can't attend this conference, I think it not proper for you to go out there and not know what my rules are in this case. Now, you didn't attend it. And I'm telling you now under no circumstances do I want you to start in on this. If somebody says that they work for an insurance company or somebody in their family works for an insurance company I'll investigate that, and if I didn't investigate it to your satisfaction you got a right to go into it. Now this is how we're going to handle it.

THE DEFENSE: Your honor, may I make one other point? I have recently read the headnotes or the notes on that, and I would invite you to do the same.

THE COURT: Yes.

THE DEFENSE: I don't believe that that instruction—and I'm going to object to that instruction being given to the jury.

THE COURT: Okay.

THE DEFENSE: I don't believe that that's a proper instruction

in this case. It's only when there is insurance that is involved in a lawsuit that I believe that that instruction should go in. With all due respect, your honor, that's all I know about it, but I would like the opportunity to research it. I think it's extremely detrimental for my case when you have two best friends that are suing each other or one suing another to say just because there may be insurance here you're not supposed to consider it.

THE COURT: How else can we handle it?

THE DEFENSE: Just grant my motion for a mistrial.

THE COURT: I'm not going to grant your motion for a mistrial.

THE DEFENSE: I am making a record, your honor, and I appreciate that, but I would ask that that instruction not be given.

THE COURT: You don't want this instruction?

THE DEFENSE: I don't think I do. Your honor, if you read the notes on that, I don't believe it is proper to give it.

THE COURT: Well, I don't know what to do in order to protect what you are stating. He's talking about insurance, and insurance is mentioned here. I'll give it at the end. Then I'll give it to them. I can give it to them when we give our instruction.

THE PLAINTIFF: I would ask that you do it right now, so we can move on with this, judge, your first suggestion, get it out of the way.

THE DEFENSE: I'd like to read the notes, if I may, your honor.

THE COURT: Well, I have read the notes here. This instruction, of course, must never be used in any case where the jury has not received any information that either of the parties is insured. Now we don't know. We don't know if any of the parties are insured, but keep insurance out of the case. I'm not going to give the instruction, but I'm telling you now—and, you know, you started now, and I don't want to make any speeches. I just want you to ask questions. You can ask questions that go to the qualifications of the juror, that's all. I don't care how you handle it. If you want to ask all twelve of them at one time or you want to ask one at one time or four at one time, I don't care, but you got ten minutes to do it and let's get on with this.

THE DEFENSE: My motion for a mistrial is denied?

THE COURT: Denied.

THE DEFENSE: Thank you, your honor.

THE PLAINTIFF: Judge, just so that I know the court's instruction, you are directing me not to use the word insurance? Is there a problem with me asking about investigators, claims investigators?

THE COURT: There's no claims investigators. If anybody's a claim investigator, if they say they got anything to do with claims or investigation, I go into it. There's nobody that's mentioned claims.

THE PLAINTIFF: Why don't you ask them?

THE COURT: Ask them what?

THE PLAINTIFF: When you ask the general question.

THE COURT: I asked them what they do. I asked what their wife does. I asked them what their family does.

THE PLAINTIFF: You ask them if they are any friends that are doctors, any friends that are medical.

THE COURT: I'm not going to go into adjusters or anything else like that.

THE PLAINTIFF: That's not fair to us. We should be able to know that.

THE COURT: Well, I'm not fair to you? Then I'm not fair to you. I'm sorry. Let's go."

■ While the trial court was wise to tread carefully in the area of insurance when dealing with prospective jurors, it should not have completely foreclosed the discussion. "As a matter of practice, the determination of the questions of good faith is for the trial court and will not be disturbed absent an abuse of discretion." *Strasma v. Rager*, 145 Ill. App. 3d 826, 831 (1986), citing *Wheeler v. Rudek*, 397 Ill. 438, 443 (1947). Counsel could have been permitted to ask open-ended questions of the prospective jurors regarding their employment, provided he did not imply that the defendant was insured or mention the word "insurance" so often as to create an improper impression in the minds of the prospective jurors. Since there is no way to know the history of a prospective juror in advance, and jury cards only tend to ask about present employment, not employment history, some manner of questioning is likely to be necessary in a case such as this. There is a difference between asking about insurance and asking about prior experience. The goal should be to craft the questions so the desired information comes out of the mouths of the jurors and not the lawyers. It will certainly fall to the trial court to determine whether the questions asked are asked in good faith. In the case at bar, the trial court found improper the question of whether the jurors had "any friends or relatives that are lawyers, claims investigators, insurance adjusters, anybody involved in these actions." While we might have handled it differently, we find that any error occasioned by the trial court's ruling on these *voir dire* questions to be harmless.

■ The next claim of prejudicial error involves the alleged misuse of a deposition transcript for improper impeachment. Supreme Court Rule 212 reads, in pertinent part, as follows:

"If only a part of a deposition is read or used at the trial by a party, any other party may at that time read or use or require him to read any other part of the deposition which ought in fairness to be considered in connection with the part read or used." 134 Ill. 2d R. 212(c).

"[T]he privilege to require additional portions of a deposition to be read is conditioned on the fairness test. This standard reflects the purpose of the rule, which is to prevent distortion that might occur when a party introduces isolated statements from a deposition into evidence. Before a party can force another to read additional portions of a deposition, the trial court must first conclude the additional statements are necessary to either explain or modify the statements introduced by the other party." *Bank of Illinois v. Thweatt*, 258 Ill. App. 3d 349, 361 (1994), citing *Tarshes v. Lake Shore Harley Davidson*, 171 Ill. App. 3d 143, 152 (1988). In *Thweatt*, the trial court allowed additional deposition testimony and determined that the fairness standard set forth in Supreme Court Rule 212(c) required that such additional statements be introduced which the appellate court approved. However, in *Thweatt*, the court acted as it did for purposes of fairness and for clarification purposes.

In examining the two statements in the case at bar, it is difficult to understand why the introduction of the second passage is necessary for clarification purposes. The record indicates that the initial passage is in no way clarified by the second passage. The most important part of the first passage is that "there were two cars on the right and the second car on the right moved into the middle lane and that caused the accident." The second passage, in saying "[i]t precipitated a movement by the car we were driving in which eventually led to this car we were driving in hitting the center wall on the Edens expressway," simply does not clarify anything. We can find no reason to disturb the ruling of the trial court regarding the deposition passages.

## CONCLUSION

Accordingly, the judgment of the circuit court is affirmed.

Judgment affirmed.

GREIMAN and THEIS, JJ., concur.